Mr. Justice Cox
delivered the opinion of the court.
The bill, in this case, in substance, shows that in the year 1871, the complainant purchased from Dr. William Gunton and others, among whom are the present defendants, professing to be trustees of the Bank of Washington, a large amount of property in this city for the sum of forty thous- and dollars; that he received a deed from the trustees containing a covenant of warranty (whether general or special is not shown), and also a covenant of further assurance; that he made a cash payment of five thousand dollars, and gave his four notes for eight thousand seven hundred and fifty dollars each, payable at one, twm, three and four years, with interest at seven per cent.-with a deed of trust, in the usual form, to secure them; that he entered into possession of the property, and, in the course of time, expended about nine hundred dollars in improvements and paid about twenty-five hundred dollars on account of interest, which is a fraction over one year’s interest; that he remained in possession of the property until the summer of 1885, which was fourteen yeai’s, and then the Bank of Washington caused the property to be sold under the deed of trust for default in the *409 payment of the purchase money. He had paid no money on account of either principal or interest «except about one year’s interest.. He’ claims the aid of this court, and asks that the defendants, the present trustees, shall be required to refund to him the cash payment of five thousand dollars made bjr him with interest, and to. surrender the notes given by him, upon the ground that he never received a valid title to the property. As to one piece of ground, out of a large number of pieces, he says that the Bank of Washington never had title. As to the other property, his position is, that the proceeding by which the Bank of Washington, like all the other banks in this District, on the eve of the expiration of its charter, transferred all its property to trustees to manage for the benefit of shareholders, was legally invalid and vested no title in their trustees, and consequently these trustees could pass no title .to the complaiuant.
He does not allege that he has ever been evicted or .threatened with eviction, or disturbed in his possession by any superior'title, or, in .fact, that anybody in the world claims any title to the property except himself. Nor does’he aver that there has been any breach of the covenant of further assurance; that is, that hedías ever demanded and been re^ fused further assurance.
We are all aware that the covenant of warranty is not broken except by an eviction under paramount title, and that a covenant of assurance is not broken until a demand and refusal of further assurance. So that he does not aver a -breach of either of the covenants of title in the deed. Nor does he give any explanation of his long delay in asking to have this contract of sale rescinded except that he has only now discovered the defect in the title. He does not show why he could not have discovered it on the day of his purchase as easily as he has done it now after being 'fourteen years in possession. But he plants himself almost entirely on the naked ground that the title received by him was defective.
.There areseveral objections to this proceeding which have *410 been insisted upon in a general way, such as his failure to show (except as to one piece of property which he says was not the property of the Bank of Washington) any invalidity in the title and the manifest laches in making this application so late.
But there is one conclusive answer to the prayer of relief which relieves us from the necessity of commenting upon any of the others, and that is found in the general rule of law that where a sale of real estate is consummated by a transfer of title aud the purchaser enters into possession under it, then, although he may discover a defect in his title, yet if he is not evicted or threatened with eviction and is in peaceable occupancy of the property, his only redress is to sue on the covenants of title contained in his deed, and he has no right to reclaim money that he has already paid, or to be protected from the claim for the rest of the purchase money.
Both of these claims are made here, viz.: to have the money refunded and to be relieved from further payment. I will cite from only one case under each head. In the case of Refeld et al. vs. Woodfolk, in 22 Howard, 318, the court below had virtually decreed a repayment of the purchase money paid. The whole of the purchase money had been paid, and it was discovered that some encumbrances were on the property at the time of the purchase and the court decreed that the vendor should pay them off. It was virtually a decree that he should repay the purchase money. On appeal in that case the Supreme Court says, p. 327:
“But circumstances may very materially modify the situation of the parties, and indispose that court to interfere between them, even in cases within the jurisdiction of the court. If the contract has been executed by the delivery of possession and the payment of the price, the grounds of interference are limited by the covenants of the deed or to cases of fraud and misrepresentation. ‘The cases will show-,’ says this court, ‘ that a purchaser in the undisturbed possession of the land will not be relieved against the payment of the purchase money on the mere ground of defect of title, *411 there being no fraud or misrepresentation; and that in such a case he must seek his remedy at law on the covenants in his deed; that if there is no fraud and no covenants to secure the title, he is without remedy, as the vendor, selling in good faith, is not responsible for the goodness of his title beyond the extent of the covenants in his deed.’ Patton vs. Taylor, 7 Howard, 132.
“This rule, experience has shown, reconciles the claims of convenience with the duties of good faith. The purchaser is stimulated to employ vigilance and care in reference to the things as to which they will secure him from injustice, while it affords no shelter for bad faith on either part. * * * We have met with no case in w'hich a vendee, in possession under a contract of purchase or a deed with covenants, has been permitted to reclaim the purchase money already paid, to be held as a security for the completion or protection of his title. The Roman law permitted the vendee to reclaim the purchase money in his hands, as security against an impending danger to the title ; but denied a suit for restitution, after payment, for that cause. ‘ We must not,’ says Troplong, ‘ hastily break-up a contract which the vendor may at last be able to fulfill.’ There is no analogy between the case in which the purchaser is allowed to retain the price as security, and that in which he would force the vendee to restore it for that purpose. Between the right of retention and that of restitution of the price there is the distance between the statuo quo and rescission.'’
And on the other head I refer to the case in 7th Howard, at page 159, Patton vs. Taylor, cited in the aforegoing extract.
The same rule is enforced in the cases which were cited on the brief of the complainant’s counsel from 1st and 2d Johnson’s Chancery Reports of New York ; and a summary of cases, under the same heads, will be found also in the note to page 604 of Rawle on Covenants of Title.
These authorities seem to us to dispose of the present case. There is, to be sure, in the bill, a somewhat ambiguous averment to the effect that this complainant Surrendered posses *412 sion of the property. That might, at first sight, séem ió be an averment that there had been a x-ecission, by mutual consent, of the contract, but when pressed for an explanation on that point the counsel disavowed it. So that it amounted to nothing more than the fact that the complainant had voluntarily vacated his possession of the property, and it was intended to put him .in the position of one who had surrendered all the benefits that he had received under the contract before seeking a rescission.
■ But there is no authority for the position that a man who voluntarily steps out of a property and vacates the possession is in the same attitude as one who has been evicted by title paramount. It is only in the latter case that a remedy can be sought for a defective title, and it is unnecessary to determine in this case how far a remedy can be sought in such a case. It is evident that the present case is not one of real or threatened eviction, and that the relief of the complainant, if he is entitled to any, is entirely on the covenants of title. We think, therefore, the demurrer must be sustained.